IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LINDA S.,[1] | ) |
|    *Plaintiff*, | ) |
|       v. | ) Civil No. 3:24-cv-0068-SLS |
| LELAND DUDEK,[2] Acting Commissioner of Social Security, | ) |
|    *Defendant*. | ) |

**MEMORANDUM OPINION**

In this action, Plaintiff Linda S. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title II application for disability insurance benefits. This matter comes before the Court on cross-motions for summary judgment, which have been fully briefed, making this matter ripe for review. (ECF Nos. 13, 14, 15, 18.) The Court exercises jurisdiction with the consent of the parties pursuant to 28 U.S.C. § 636(c)(1) (ECF Nos. 12, 16, 20) and pursuant to 42 U.S.C. § 405(g).

Plaintiff moves the Court to reverse the Commissioner's decision and order payment of Social Security benefits. (Plaintiff's Brief in Support of Motion for Summary Judgment (ECF No. 14) ("Pl.'s Br.") at 23.[3]) In the alternative, Plaintiff seeks a remand for further proceedings. (Pl.'s

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Leland Dudek became the Acting Commissioner of Social Security in February 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for the former Commissioner as Defendant in this action. No further action need be taken. 42 U.S.C. § 405(g).

[3] The Court uses the pagination in the underlying documents rather than the pagination generated by CM/ECF.

Br. at 23.) As the basis for relief, Plaintiff argues that the Administrative Law Judge ("ALJ") erred as a matter of law by: (1) failing to account for Plaintiff's mental limitations in (a) adapting and managing oneself and (b) concentrating, persisting, and maintaining pace in the residual functional capacity ("RFC") assessment (Pl.'s Br. at 10-18); and (2) failing to develop the record by subpoenaing Plaintiff's mental health treatment records from Kimberly Chandler-Holt, Plaintiff's former therapist (Pl.'s Br. at 18-23). In response, the Commissioner argues that the ALJ fully considered Plaintiff's non-severe mental limitations in determining the RFC and adequately developed the record. (Defendant's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 15) ("Def.'s Br.") at 9-18.) Therefore, the Commissioner asks the Court to affirm his final decision. (Def.'s Br. 18.)

For the reasons set forth below, the Court finds that: (1) the ALJ applied correct legal standards in considering Plaintiff's mental limitations, and substantial evidence supports the RFC determination; and (2) the ALJ properly developed the administrative record in accordance with applicable law. Therefore, the Court will DENY Plaintiff's Motion for Summary Judgment (ECF No. 13), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 15), and AFFIRM the final decision of the Commissioner.

## I.    PROCEDURAL HISTORY

On June 12, 2020, Plaintiff filed a Title II application for disability insurance benefits, alleging disability beginning on December 31, 2018. (Administrative Record ("R.") at 62, 64.)[4] In her application, Plaintiff alleged that she suffers from back problems, high blood pressure,

---

[4] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Memorandum Opinion. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

"[e]sclorisis," a herniated disc, and arthritis. (R. at 64.) Plaintiff's application for benefits was denied, both initially and upon reconsideration. (R. at 62, 78.) Plaintiff requested a hearing before an ALJ, and one was held on June 8, 2023. (R. at 45-61, 104.)

On July 6, 2023, the ALJ issued a written decision, finding Plaintiff disabled under the Social Security Act ("the Act") beginning January 16, 2023, but not disabled prior to that date. (R. at 23-35.) On August 15, 2023, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R. at 7-9.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ reviews the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). At step three,

3

the ALJ determines whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ determines the claimant's RFC, which accounts for the most the claimant can do despite his or her impairments. *Id.* § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his or her past employment given his or her RFC. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 404.1520(e). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 404.1520(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Id.* at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73

(8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion.  *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]."  *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d at 589.  The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight."  *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings.  *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision.  *See Breeden*, 493 F.2d at 1007.

### III.     THE ALJ'S DECISION[5]

The ALJ analyzed Plaintiff's disability claim under the five-step evaluation process.  (R. at 23-35); *see* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 31, 2018 (the alleged onset date).  (R. at 25.)

At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease and osteoarthritis but did not suffer from any severe mental impairments.  (R. at 26-27.)  Specifically, the ALJ concluded that Plaintiff's "medically determinable mental

---

[5] Because Plaintiff's assignments of error all pertain to her mental impairments, the Court largely restricts its discussion of the ALJ's decision to Plaintiff's mental impairments.

5

impairments cause no more than 'a mild' limitation" in any of the four broad areas of mental functioning (commonly called "paragraph B" criteria) and therefore Plaintiff's mental limitations were "non-severe."[6] (R. at 27.)

In making that finding, the ALJ considered the paragraph B criteria. In the first functional area of "understanding, remembering or applying information," the ALJ found Plaintiff had no limitations. (R. at 26.) The ALJ explained that Plaintiff did "not need special reminders to take care of her personal needs and grooming, to take her medicine, or to go places." (R. at 26.) The ALJ further noted that examinations showed "good judgment and insight, normal memory, and full orientation as well as logical and goal-directed thought process." (R. at 26-27.)

In the second functional area of "interacting with others," the ALJ found Plaintiff had no limitations. (R. at 27.) The ALJ stated Plaintiff gets along with others, spends time with friends and family on the phone and in person, and regularly attends church. (R. at 27.) In addition, the ALJ found that Plaintiff consistently presented with a "normal mood and affect" at examinations. (R. at 27.)

Similarly, in the third functional area of "concentrating, persisting or maintaining pace," the ALJ found Plaintiff had no limitations. (R. at 27.) The ALJ considered Plaintiff's function reports, dated July 2020 and October 2021, regarding her ability to concentrate, persist, and maintain pace. (R. at 27.) Plaintiff reported that she could drive short distances; shop in stores

---

[6] The SSA evaluates the effects of a mental disorder on four areas of mental functioning based on a five-part rating scale. 20 C.F.R. Pt. 404, Subp. P, App. 1, § 12.00(F)(2). An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis in an area. C.F.R. Pt. 404, Subp. P, App. 1, § 12.00(F)(2)(e). A marked limitation exists when an impairment seriously limits the ability to do the same. 20 C.F.R. Pt. 404, Subp. P, App. 1, § 12.00(F)(2)(d). Moderate indicates a fair limitation, mild includes a slight limitation, and "no" or "none" means the claimant can function in the area independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subp. P, App. 1, § 12.00(F)(2)(a)-(c).

and by computer; and manage her finances, including paying bills and handling bank accounts. (R. at 27.)  The ALJ acknowledged that Plaintiff reported needing to write down spoken instructions to follow them, but found Plaintiff could otherwise pay attention, finish what she started, and follow written instructions.  (R. at 27 (citing R. at 196-203 (Ex. 3E); R. at 227-34 (Ex. 8E)).)  The ALJ further noted that Plaintiff did not indicate any problems with attention or concentration on a counseling intake questionnaire.  (R. at 27.)

In the final functional area of "adapting or managing oneself," the ALJ found Plaintiff had mild limitations.  (R. at 27.)  The ALJ explained that Plaintiff could care for her personal needs with some difficulty due to her physical impairments, prepare simple meals, and care for her mother by doing light grocery shopping, picking up her medications, and paying her bills.  (R. at 27.)  The ALJ considered Plaintiff's hearing testimony that she could no longer perform light household chores despite her previously written report that she could.  (R. at 27.)  As the ALJ acknowledged, Plaintiff reported experiencing some panic attacks when overwhelmed but otherwise being able to "handle a little stress" and "changes in routine."  (R. at 27.)  The ALJ further noted that Plaintiff's outpatient mental health treatment decreased from a twice-monthly basis to a monthly basis.  (R. at 27.)  The ALJ concluded that "[b]ecause [Plaintiff]'s medically determinable mental impairments cause[d] no more than 'a mild' limitation in any of the functional areas, they [were] non-severe."  (R. at 27 (citing 20 C.F.R. § 404.1520a(d)(1)).)

At step three, the ALJ concluded that Plaintiff did not have an impairment, individually or in combination, which met or medically equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 27-28.)

The ALJ then determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical

evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. at 28.) Based on the record, the ALJ found that Plaintiff retained the ability to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: "[Plaintiff] can never climb ladders, ropes, or scaffolds. She can no more than occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl." (R. at 28.)

In arriving at the RFC, the ALJ first summarized Plaintiff's subjective complaints. (R. at 29.) Plaintiff alleged disability based on physical impairments, not mental impairments. (R. at 29 (citing R. at 187-88 (Ex. 2E)).) Plaintiff testified that she could sit for 30 minutes before needing to adjust her position, stand for 30 minutes, and lift no more than 10 pounds. (R. at 29.) She reported taking muscle relaxers three times a day which made her groggy and drowsy. (R. at 29.) Plaintiff further stated that she took two-hour naps daily, required a walking cane, and used a shower stool. (R. at 29.) Plaintiff reported that she could only prepare simple meals, drive short distances (no more than 30 minutes because she gets stiff), and make the bed (although it takes a while). (R. at 29.) Plaintiff testified to having difficulty bending which prohibited her from doing other housework such as laundry. (R. at 29.)

The ALJ then detailed Plaintiff's medical records pertaining to her severe impairments. (R. at 29-31.) The ALJ considered Plaintiff's history of degenerative disc disease in her cervical and lumbar spine and reviewed examination findings of Plaintiff's left knee, right shoulder, and spine. (R. at 29-31.) The ALJ found that Plaintiff's "history of degenerative disc disease and osteoarthritis . . . with objective abnormalities on examinations and imaging, support[ed] limiting her to light work with postural limitations . . . ." (R. at 31.) However, the ALJ also found "[v]arious factors" were inconsistent with Plaintiff's allegations of symptom severity, including

8

the conservative treatment received by Plaintiff and her own reported daily activities. (R. at 31.) The ALJ concluded:

> [T]he record suggests [Plaintiff]'s impairments impose some limitations, but the degree of limitation that is consistent with the record has been accounted for by the restrictions noted in the [RFC] . . . .

(R. at 31.)

The ALJ then considered medical opinions and prior administrative medical findings, which included the opinion of state reviewing psychologist, Howard Leizer, Ph.D. (R. at 32.) Dr. Leizer opined that Plaintiff's mental diagnoses of depression, anxiety, and post-traumatic stress disorder were non-severe. (R. at 32 (citing R. at 82-84 (Ex. 4A)).) Dr. Leizer found that the record showed Plaintiff had normal mental status findings, intact behavior and interaction, and intact memory, orientation, and concentration, but also had some difficulty managing stress. (R. at 32.) The ALJ found Dr. Leizer's opinion persuasive as it was consistent with the normal mental status findings in the record, outpatient mental health treatment, and medication prescribed by primary care providers. (R. at 32.)

After completing the RFC assessment, the ALJ found at step four that Plaintiff could not perform her past relevant work as a certified nursing aide/hospice aide. (R. at 33.) The ALJ then determined Plaintiff's vocational factors, including that she had at least a high school education and met the definition of an individual closely approaching advanced age at the alleged onset date and subsequently changed age category to an individual of advanced age. (R. at 33.) At step five, the ALJ considered Plaintiff's vocational factors and RFC to determine whether Plaintiff could perform jobs that exist in significant numbers in the national economy. (R. at 33-34.) The ALJ adopted the vocational expert's testimony that Plaintiff could perform the jobs of assembler, routing clerk, and cleaner prior to January 16, 2023. (R. at 34.) However, the ALJ found were no jobs existing in significant numbers in the national economy that Plaintiff could perform on or

after January 16, 2023, when she changed to an individual of advanced age. (R. at 34.) Therefore, the ALJ found Plaintiff not disabled from December 31, 2018 (the alleged onset date) through January 15, 2023, but found Plaintiff disabled for a period beginning on January 16, 2023 and expecting to last twelve months. (R. at 35.)

## IV.   ANALYSIS

In seeking reversal, Plaintiff first argues that the ALJ failed to properly consider Plaintiff's mental limitations in the RFC. (Pl.'s Br. at 10-16.) This first argument has two subparts. Plaintiff asserts that the ALJ failed to account for Plaintiff's mild limitations in adapting and managing oneself in the RFC. (Pl.'s Br. at 10-16.) Plaintiff also argues that the ALJ erred in finding Plaintiff had no limitation in concentrating, persisting, and maintaining pace and thus failed to consider that limitation in the RFC. (Pl.'s Br. at 16-18.) As another assignment of error, Plaintiff contends that the ALJ failed to adequately develop the record when he denied Plaintiff's request to subpoena mental health records from Plaintiff's former therapist. (Pl.'s Br. at 20-23.) The Court addresses each argument below and finds no reversible error.

### A. **The ALJ Properly Considered Plaintiff's Mental Limitations in Determining the RFC**

Plaintiff contends that the ALJ failed to include appropriate limitations in the RFC to address Plaintiff's mental impairments. (Pl.'s Br. at 10.) Plaintiff also argues that the ALJ erred in finding that Plaintiff had no limitations in concentrating, persisting, or maintaining pace. (Pl.'s Br. at 17.) The Commissioner responds that "[s]ubstantial evidence supports the ALJ's finding that Plaintiff did not have any severe mental impairments," (Def.'s Br. at 10) and further that "mild limitations in the Paragraph B criteria do not compel specific RFC limitations" (Def.'s Br. at 15). The Court finds that the ALJ reasonably accounted for Plaintiff's mental limitations in the RFC and sufficiently explained how he made those determinations.

The ALJ considered Plaintiff's mental limitations at step two. He found Plaintiff's "medically determinable mental impairments cause no more than 'a mild' limitation in any of the functional areas" and were thus "non-severe." (R. at 27.) In so finding, the ALJ determined that Plaintiff had no limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (R. at 26-27.) The ALJ found only a mild limitation in adapting or managing oneself. (R. at 27.) In other words, the ALJ found no limitations in three areas and no more than slight limitations in Plaintiff's ability to function "independently, appropriately, effectively, and on a sustained basis" in one area used to evaluate mental impairments. 20 C.F.R. Pt. 404, Subp. P, App. 1, § 12.00(F)(2)(a)-(c).

The ALJ further explained his reasoning for concluding that Plaintiff was mildly limited in adapting and managing oneself. (R. at 27.) The ALJ noted that Plaintiff reported preparing simple meals, caring for her personal needs with "some" difficulty in dressing, and caring for her mother, which included shopping, picking up medications, and managing finances. (R. at 27.) Although Plaintiff originally reported that she could perform light household chores, the ALJ acknowledged her hearing testimony that she could no longer complete those tasks. (R. at 27.) The ALJ also emphasized that Plaintiff reported being able to "handle a little stress [and] changes in routine" but also experiencing infrequent panic attacks when she felt overwhelmed. (R. at 27.) The ALJ further cited Plaintiff's testimony that she had decreased her outpatient mental health treatments to once per month. (R. at 27 (citing R. at 1104-10 (Ex. 18F); R. at 1322 (Ex. 29F); R. at 1603-08 (Ex. 39F)).) These findings support the ALJ's conclusion that Plaintiff's mental impairments had "no more than 'a mild' limitation in any of the functional areas" and the absence of mental limitations in Plaintiff's RFC. (R. at 27.)

11

Substantial evidence also supports the ALJ's conclusion that Plaintiff had no limitation regarding her ability to concentrate, persist, or maintain pace. (R. at 27.) The ALJ based this conclusion, in part, on Plaintiff's function reports, dated July 11, 2020 and October 12, 2021. (R. at 27 (citing R. at 196-203 (Ex. 3E); R. at 227-34 (Ex. 8E)).) In those reports, Plaintiff reported driving short distances to doctor appointments and to the grocery store, shopping for groceries and toiletries twice per week, paying bills, and managing her own finances. (R. at 27, 196, 199-200, 227, 230-31.) In addition, Plaintiff stated that she is able to "pay attention enough after pain [and] stiffness sets in" and finish what she starts even though she may "have to stop and go back" to that task. (R. at 27, 201, 232.) While Plaintiff reported having to write down spoken instructions to follow them, she did not otherwise identify memory, concentration, understanding, or following instructions as areas impacted by her alleged disability. (R. at 27, 201, 232.) In addition, an April 26, 2022 intake questionnaire similarly did not identify any issues with Plaintiff's ability to pay attention, concentrate, or follow directions. (R. at 27, 922.) Thus, there is substantial evidence to support the ALJ's finding that Plaintiff had no limitation in her ability to concentrate, persist, and maintain pace—in other words, a finding that Plaintiff could "independently, appropriately, [and] effectively" function in that area "on a sustained basis." 20 C.F.R. Pt. 404, Subp. P, App. 1, § 12.00(F)(2)(a)-(c).

Plaintiff argues that the ALJ erred in failing to identify the "diagnosis/name" of her non-severe mental impairments and in failing to adopt related limitations in the RFC, or otherwise explain why such limitations were not needed. (Pl.'s Br. at 12-13; Plaintiff's Reply (ECF No. 18) ("Pl.'s Reply") at 1-3.) These arguments fail for multiple reasons.

First, although the ALJ did not expressly name Plaintiff's non-severe mental impairments in the decision, he relied in part on the opinion of state reviewing psychologist, Dr. Leizer, in

findings those impairments non-severe. (R. at 32.) Specifically, Dr. Leizer opined that Plaintiff's mental diagnoses of depression, anxiety, and post-traumatic stress disorder were non-severe, and the ALJ found that opinion persuasive. (R. at 32 (citing R. at 82-84 (Ex. 4A)).) The Court finds no reversible error in the ALJ's failure to expressly list Plaintiff's non-severe mental impairments and acceptance of Dr. Leizer's opinion regarding the same as persuasive. *See Yarrison v. Colvin*, No. 1:15-cv-00683, 2016 WL 4491858, *5 (M.D. Pa. Aug. 2, 2016) ("[A]ny failure on the ALJ's part to . . . precisely name [an] impairment does not undermine the entire analysis, when ultimately the ALJ properly characterized the symptoms and functional limitations."), *report and recommendation adopted*, 2016 WL 4479402 (M.D. Pa. Aug. 25, 2016).

Second, the ALJ found no limitations in three of the four areas of mental functioning and only mild, or slight, limitations in one area. "ALJs are not required to explain or incorporate functional limitations with de minimis effect in RFCs." *Kimberly G. v. Comm'r of Soc. Sec.*, No. 2:21-cv-45, 2021 WL 8086729, at *10 (E.D. Va. Dec. 7, 2021), *report and recommendation adopted*, 2022 WL 882165 (E.D. Va. Mar. 24, 2022); *see also Lori A. J. v. Kijakazi*, No. 2:22-cv-131, 2023 WL 3069394, at *6 (E.D. Va. Apr. 5, 2023) ("[A]n ALJ is not required to discuss non-severe impairments in the RFC analysis so long as the ALJ considered them in the decision."), *report and recommendation adopted*, 2023 WL 3060789 (E.D. Va. Apr. 24, 2023); *Victoria B. v. Kijakazi*, No. 3:22-cv-157, 2023 WL 2579461, at *8 (E.D. Va. Mar. 20, 2023) (concluding "that the ALJ was not required to incorporate Plaintiff's mild limitations in the [RFC]"); *Younger v. Berryhill*, No. 2:18-cv-182, 2019 WL 3432771, at *5 (E.D. Va. June 21, 2019) (finding remand was not required "when the ALJ failed to give an explanation in the presence of mild limitations

only"), *report and recommendation adopted*, 2019 WL 3451305 (E.D. Va. July 29, 2019).[7] In finding Plaintiff's mental impairments non-severe, her "limitations by their nature have 'no more than a minimal effect' on her working ability." *Kimberly G.*, 2021 WL 8086729, at *10 (quoting SSR 85-28, 1985 WL 56856 (Jan. 1, 1985)).

Third, the ALJ considered and addressed Plaintiff's mental impairments—or the lack thereof—in determining her RFC in any event. Plaintiff alleged only physical impairments in both her initial application for disability benefits and upon reconsideration. (R. at 29, 64 (filing claim for disability benefits due to "[b]ack problems; [h]igh blood pressure; [e]sclorisis; [h]erniated disc; [and] [a]rthritis"); 79.) At the hearing, however, she testified to experiencing "anxiety and stuff, stress, and feeling overwhelmed." (R. at 52.) Plaintiff explained that "not working, [having] no income, worrying about how [her] bills are getting paid . . . , and . . . a recent divorce" all contributed to her stress and anxiety. (R. at 52.) In the RFC assessment, the ALJ considered the medical evidence, Plaintiff's statements and testimony, and the opinion of Dr. Leizer. (R. at 32.)

Dr. Leizer opined that Plaintiff had mild limitations in adapting or managing oneself but otherwise had no limitations in understanding, remembering, or applying information; interacting with others; or concentrating, persisting, or maintaining pace. (R. at 84.) He noted that Plaintiff's "psych diagnoses [were] not severely limiting" and that she "[did] not display or report the full

---

[7] While Plaintiff cites other district court opinions within the Fourth Circuit as support for her contention that the ALJ was required to account for mild mental limitations in the RFC (Pl.'s Br. at 10, 13 (quoting *Karen W. v. Kijakazi*, No. 2:23-cv-00044, 2023 WL 6289991 (S.D.W. Va. July 31, 2023), *report and recommendation adopted*, 2023 WL 6282856 (S.D.W. Va. Sept. 26, 2023), and *Thompson v. Colvin*, No. 1:15-cv-00234-FDW, 2016 WL 3610161 (W.D.N.C. July 1, 2016))), decisions from this Court do not support her argument. Consistent with those prior decisions within the Eastern District of Virginia, the Court declines to extend *Mascio*'s holding to mild or no limitations. *See, e.g.*, *Kimberly G.*, 2021 WL 8086729, at *10 ("The Fourth Circuit has indicated that *moderate*—not *mild*—limitations must be either accounted for in the RFC or alternatively explained. This district has routinely declined to extend this requirement to mild limitations.") (citing *Mascio*, 780 F.3d at 638) (emphasis in original).

range of [Post Traumatic Stress Disorder], depressive disorder, or anxiety disorder symptoms." (R. at 84.) Based on these findings, he concluded that Plaintiff had mild limitations with stress management, but otherwise cited examinations showing Plaintiff had "consistently normal mental status findings" and intact behavior, interaction, memory, orientation, and concentration. (R. at 32, 84.) The ALJ found Dr. Leizer's opinion persuasive considering the evidence showing normal mental status findings, outpatient mental health treatment, and symptoms managed by medication. (R. at 32.)

Far from requiring "guesswork and post-hoc rationalizations" (Pl.'s Reply at 2), the ALJ supported his step two findings that Plaintiff's mental impairments caused no more than a minimal impact on her ability to perform work activities and further concluded that the RFC assessment reflected the de minimis degree of limitations found. Reading the decision as a whole, the ALJ's explanations allow for meaningful review, and substantial evidence supports the ALJ's findings that Plaintiff's non-severe mental impairments did not justify mental RFC limitations. *See Britt v. Saul*, 860 F. App'x 256, 262 (4th Cir. 2021) (finding the challenged impairments were addressed under step two which "tells [the court] what impact th[o]se limitations had in the [RFC] analysis" and allows for "a meaningful review without making an [ALJ] repeat himself"); *Caryn D.M. v. Kijakazi*, No. 4:21-cv-40, 2022 WL 4544737, at *7 (E.D. Va. June 8, 2022) ("The ALJ's explanation of Plaintiff's nonsevere mental impairments sufficiently 'buil[t] an accurate and logical bridge from the evidence to his conclusion' that Plaintiff's RFC did not require any mental limitations.") (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)), *report and recommendation adopted*, 2022 WL 4541636 (E.D. Va. Sept. 28, 2022); *Todd A. v. Kijakazi*, No. 3:20-cv-594, 2021 WL 5348668, at *8 (E.D. Va. Nov. 16, 2021) (finding that the ALJ's opinion must be read as a whole); *see also William W. v. Kijakazi*, No. 1:22-cv-473, 2023 WL 5436005, at

\*17 (M.D.N.C. Aug. 23, 2023) ("The ALJ did not expressly assess [p]laintiff's mental work-related abilities on a function-by-function basis . . . [but] no basis for remand exists because . . . the ALJ's decision nevertheless supplies the necessary 'accurate and logical bridge.'"). Therefore, the Court finds no error.

### B. The ALJ Fully Developed the Administrative Record in Accordance with Regulations

Plaintiff next argues that the ALJ failed to develop the administrative record. (Pl.'s Br. at 20-23; Pl.'s Reply at 3.) Specifically, Plaintiff challenges the ALJ's failure to subpoena mental health treatment records from Ms. Chandler-Holt, Plaintiff's previous therapist, "for the year 2021" based on the assumption that those records would be duplicative. (Pl.'s Br. at 20; *see also* Pl.'s Reply at 3; R. at 51.) The Commissioner counters that Plaintiff has the burden to produce evidence of disability, not the ALJ. (Def.'s Br. at 16-18.) The Commissioner further asserts that the ALJ properly denied the subpoena request because he had sufficient evidence to make a disability determination. (Def.'s Br. at 16-18.) Because the ALJ complied with applicable legal standards in developing the administrative record, the Court finds no error.

The law places the burden on the claimant to present evidence of disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a); *see also Bowen*, 482 U.S. at 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his [or her] own medical condition, to do so."); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("Claimant had the burden of proving [his or] her disability to the satisfaction of the Secretary . . . .") However, the regulations and case law also impose an obligation on the ALJ to develop the record. 20 C.F.R. § 404.1512(b)(1); *see also Sims v. Apfel*, 530 U.S. 103, 111 (2000) ("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."); *Collins v. Saul*, No. 3:19-cv-824, 2020 WL 4516855, at \*9 (S.D.W. Va. July

16

17, 2020) ("[T]he ALJ is required to ensure that the record contains sufficient evidence upon which the ALJ can make an informed decision."), *report and recommendation adopted*, 2020 WL 4508312 (S.D.W. Va. Aug. 5, 2020). Notably, the ALJ has "a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record" and "cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (references omitted). An ALJ, in his or her discretion, may "issue a subpoena '[w]hen it is reasonably necessary for the full presentation of a case.'" *Prince v. Berryhill*, No. 3:16-cv-175, 2017 WL 2872837, at *11 (E.D. Va. June 19, 2017) (quoting 20 C.F.R. § 404.950(d)(1)), *report and recommendation adopted*, 2017 WL 2872421 (E.D. Va. July 5, 2017). Only when an ALJ "fails in his [or her] duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant," should the case be remanded. *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980).

Plaintiff, by counsel, submitted a written request for the ALJ to subpoena mental health records from Ms. Chandler-Holt on February 16, 2023, and May 10, 2023. (R. at 23, 152-53.) At the administrative hearing, the ALJ advised Plaintiff that he would review the record and would issue a subpoena only if additional records were needed to aid in his disability determination. (R. at 23, 49, 60.) Treatment notes within the record showed "normal mental status findings, intact behavior and interaction, intact memory, orientation, and concentration," "some difficulty managing stress," and "outpatient mental health treatment and medication prescribed by primary care clinicians." (R. at 32.) The ALJ also considered Plaintiff's daily activities; Plaintiff's subjective complaints and reports to her treatment providers, including Penny L. Sprecher, a clinical psychologist; and Dr. Leizer's mental health assessment and report. (R. at 26-27, 32.) The ALJ analyzed treatment notes from Dr. Sprecher, who treated Plaintiff around the same time as

17

Ms. Chandler-Holt in 2021.[8] (R. at 27 (citing R. at 1104 (Ex. 18F) (recommending Plaintiff "[c]ontinue with Ms. Holt to develop coping skills and learn how to deal with stress")).) After reviewing the record, the ALJ declined to issue a subpoena for the mental health records, finding the "records would likely be duplicative of—and would not add to the information in—the records already in the file." (R. at 23.)

The Court finds no legal error in the ALJ's development of the administrative record. While Plaintiff contends that the ALJ erred in failing to subpoena Ms. Chandler-Holt's mental health records, (Pl.'s Br. at 20), Plaintiff had a duty to submit all known evidence relating to any alleged disability, including mental impairments. 20 C.F.R. § 404.1512(a). "This duty is ongoing and requires [the plaintiff] to disclose any additional related evidence about which [the plaintiff] become[s] aware." *Id.* § 404.1512(a)(1). If the ALJ determines that the evidence on file is insufficient to make a finding as to Plaintiff's disability, then the regulations grant the ALJ *discretion* to seek additional or clarifying information. *Id.* § 404.1512(b).

The ALJ did not err by failing to subpoena Ms. Chandler-Holt's mental health treatment records as those documents were not "necessary for the full presentation of [the] case." *Prince*, 2017 WL 2872837, at *11. As noted above, Plaintiff alleged only physical impairments in both her initial application for disability benefits and upon reconsideration. (R. at 64, 79.) Regardless, the ALJ considered Plaintiff's mental impairments and the entire record, including, but not limited to, two function reports; Plaintiff's hearing testimony; Plaintiff's statements regarding her impairments, limitations, and activities of daily living; mental health treatment records from

---

[8] While Plaintiff asserts that "evidence is missing regarding the Plaintiff's mental health for most of the year 2021," (Pl.'s Mem. at 20), the ALJ considered and cited to Dr. Sprecher's treatment notes, dated January 14, 2021 and May 18, 2021, relating to Plaintiff's mental health. (R. at 27 (citing R. at 921-30 (Ex. 12F); R. at 1104 (Ex. 18F)).)

18

Plaintiff's clinical psychologist; and a state agency reviewing psychologist's report. (R. at 26-27, 32.) The ALJ did not find it necessary to request additional information and thus properly denied the request to subpoena Ms. Chandler-Holt's mental health treatment records. The ALJ did not abuse his discretion in finding that the additional information sought was not "reasonably necessary for the full presentation of [the] case." *Prince*, 2017 WL 2872837, at *12 (E.D. Va. June 19, 2017) (issuance of a subpoena is within the discretion of the ALJ).

## V. CONCLUSION

For the reasons set forth above, the Court will DENY Plaintiff's Motion for Summary Judgment (ECF No. 13), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 15), and AFFIRM the final decision of the Commissioner. An appropriate Final Order will accompany this Memorandum Opinion.

/s/ 
Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: March 26, 2025